Warren **T. THRASHER**, Plaintiff in Error,

v.

**BOARD OF GOVERNORS**, Registered Dentists of Oklahoma, a statutory entity, Dr. Lacy H. Bell, Dr. Hayden Dillard, Dr. Floye E. Dickson, Dr. Wm. E. Cole, Dr. Fred Entriken, Dr. Norman T. Enmeier and Dr. Loyd E. Pace, Individually, and as Members of the Board of Governors, Registered Dentists of Oklahoma, Defendants in Error.

No. 38858.

Supreme Court of Oklahoma.

Feb. 14, 1961.

As Amended Feb. 16, 1961.

Edward M. Box, and George W. Gay, Oklahoma City, for plaintiff in error.

Tom Harley, Oklahoma City, for defendants in error.

Mosteller, Fellers, Andrews, Snider & Baggett, and James F. Davis, Oklahoma City, for the Oklahoma State Dental Ass'n, Amicus Curiae.

BLACKBIRD, Vice Chief Justice.

Plaintiff in error, a dental laboratory technician and operator of a dental laboratory, commenced this class action for himself, as plaintiff, and others similarly situated, against defendants in error, as defendants, to restrain defendants from enforcing or attempting to enforce " * * * any of the terms and provisions * * *" of House Bill ("H. B.") No. 697 enacted by the Twenty-Seventh Oklahoma Legislature (Tit. 59, Chap. 7, S.L.1959, pages 225–245; Tit. 59 O.S.1959 Supp., §§ 327.1–327.52, both incl.) entitled "The State Dental Act" in so far as "same relates to the regulation, control or licensing of dental laboratory technicians, and in so far as the same pertains to the regulation, licensing, control, direction or operation of dental laboratories within the State of Oklahoma * * *". The parties appear here in the same relative positions they occupied in the trial court, and will hereinafter be referred to by their designations there.

In his petition, plaintiff alleged that the various provisions of said State Dental Act, therein complained of, are unconstitutional for various reasons, which, in so far as pertinent to the issues argued in this appeal, will be hereinafter set forth and dealt with. He also alleged, among other things, in substance, that, unless restrained, defendants would attempt to enforce such allegedly unconstitutional provisions and compel him, and others similarly situated to operate "their business and vocation" in accord therewith. In an amendment to his petition, plaintiff alleged, in substance, that according to the Act, he and others similarly situated are entitled, as a matter of right, to have "licenses" to pursue their vocations issued to them by "the Board Of Governors, Registered Dentists of the State of Oklahoma", merely upon paying a fee of $1.00; but that said Board has attempted to prescribe a form of "Application for permit to operate dental laboratory in the State of Oklahoma" (a copy of which was attached to said pleading) which contains a questionnaire for prospective applicants for such licenses to answer, that includes "questions not prescribed or contemplated by such Legislative Act and not in keeping with any standard fixed * * * (by it) * * * which said questions are by their very nature an unlawful, capricious, arbitrary and unconstitutional invasion * *" of private rights. Plaintiff also alleged that the application form attempts "to require and compel this plaintiff to accept and agree to abide by all of the terms and provisions of House Bill 697, notwithstanding the unconstitutionality thereof."

The trial court sustained defendants' demurrer to plaintiff's petition, as amended, and upon plaintiff's election to stand on said pleading, entered judgment dismissing the action. From said judgment, plaintiff has lodged the present appeal.

Defendants concede the right, plaintiff asserts in Proposition I, to bring this action, for himself and others similarly situated. Therefore, that proposition presents no issue, and requires no treatment, herein.

Under his Proposition III, plaintiff asserts that for the first time in Oklahoma history, dental laboratory technicians and those operating dental laboratories have, by House Bill 697, been recognized as being separate, distinct and apart from the dental profession and "must henceforth be so treated." Although we think the language, in which this Proposition is stated, is perhaps too broad, it is a fair interpretation of House Bill 697, to say that it recog-

nizes that a man may be a dental technician, or operator of a dental laboratory, without practicing dentistry within the meaning of the Act, and, to that limited extent, we will agree with the asserted proposition, for the purpose of dealing with plaintiff's arguments premised thereon.

■ Under his Proposition II, plaintiff contends that the questioned provisions of House Bill 697, constitute "an arbitrary, capricious, and unconstitutional delegation of Legislative powers" because—unlike said law's provisions concerning the practice of dentistry and dental hygiene—they set forth no standard by which the qualifications of a dental laboratory technician may be determined. (As will be noted, this argument complains of a feature of the Act, of which plaintiff sought, in his petition's amendment, to take advantage and there use, as the basis for his objection to the form of application prescribed by the Board of Governors). As defendants point out, the Act delegates no discretion to anyone that should prevent plaintiff, and others similarly situated, from obtaining licenses to pursue their occupations. Section 36 thereof (Tit. 59 O.S.1959 Supp. § 327.36) specifically provides:

"Upon this Act becoming effective, *all persons, firms or corporations then engaged* within this State in the business of a dental laboratory, as herein defined, together with the name or names and addresses of all persons, firms, corporations or partnerships, and with the names of all personnel employed, shall within sixty (60) days file with the Secretary of the Board of Governors a written application, the form of which shall be prescribed by the Board of Governors, for a permit to operate a dental laboratory in this State, together with a fee of One Dollar ($1.00).

"Upon the receipt of such application and fee, the Board of Governors *shall grant* a permit to the applying dental laboratory to conduct the business of a dental laboratory within the State of Oklahoma." (Emphasis ours).

On the basis of the wording contained in the above-quoted provision, it would appear that the Board's action in issuing permits to dental laboratory operators, already in business when the Act became effective—like plaintiff and those similarly situated—is purely ministerial; and that there are no prerequisites or qualifications for obtaining such a permit, other than those the Legislature has specifically set forth in the Act. We are therefore of the opinion that plaintiff's argument that the Act grants the Board powers of regulation, without furnishing it standards to go by in exercising them, is, as to him, and others similarly situated, without merit.

■ Many of plaintiff's contentions under his Propositions V, VI, VII, VIII, and IX overlap, and are repetitious. Others are general and lack argument and citation of authority to support them. They therefore need not be passed upon. Howlett v. Mayo's, Inc., 186 Okl. 651, 100 P. 2d 263. In Proposition V, he asserts: "The terms and provisions of the Act in question are contrary and attempt to make Legislative determinations that are against the laws of reason and common sense; * * *". His Proposition VI, and the argument thereunder, contains general reference to provisions of the Act, he characterizes as constituting "an invidious discrimination", and denial to technicians and laboratories of the equal protection of the law. His Proposition VII states:

"House Bill 697 violates the terms and provisions of Sections 2, 32 and 33 of Article II, and Section 51 of Article V of the Constitution of the State of Oklahoma by reason of the fact that it is an arbitrary, capricious and despotic interference with individual rights, creates a monopoly, and grants exclusive rights and privileges to prejudicial and hostile groups."

His Proposition VIII asserts:

"The provisions of House Bill 697, insofar as the same pertains to dental

laboratories and dental laboratory technicians, violate Section 2, 7, 23, and 24 of the Constitution of the State of Oklahoma and the Fifth and Fourteenth Amendments to the Constitution of the United States for that the effect thereof is to deprive the persons affected of liberty and property without due process of law, and denies to them the enjoyment of the gains of their own industry."

In opening their argument under Proposition VII, plaintiff's counsel frankly confess that they have found no Oklahoma cases to support it; and, though they make averments enumerated "(a)" to "(f)" concerning House Bill 697, no clue is given as to which provision, or provisions, of said law, if any, they are thought to apply; and no argument, or citation of authority, is submitted in support thereof, except various statements, phrased in general terms, and case citations, indicating their opinion that said law violates the spirit and letter of the Oklahoma Constitution by arbitrarily interfering with private business, destroying the liberty of free enterprise, and attempting to exercise the State's police power in an unreasonable, unnecessary, and discriminatory manner.

Plaintiff's only claims concerning the Act, which his counsel make a studied and specific effort to support (as we understand their arguments) pertain to the Act's Sec. 20 (Tit. 59 O.S.1959 Supp. § 327.20) which he says, in substance, places his vocation and/or occupation virtually within exclusive control of the dentists of this State. Said section reads in material part, as follows:

"Any person shall be regarded as practicing dentistry within the meaning of this Act who:

\*     \*     \*     \*     \*     \*

(n) shall furnish, supply, construct, reproduce or repair, or offer to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as plates), bridges or other substitutes for natural teeth for the user or prospective user thereof;

\*     \*     \*     \*     \*     \*

"Provided that nothing in this Section shall be so construed as to prevent the following:

"(f) The filling of a specific work order written by a licensed dentist, by a dental laboratory technician in a dental laboratory using inert materials and mechanical devices for the fabrication of any restoration appliance or thing to be worn in the human mouth."

Under Proposition V, plaintiff's counsel say:

"Here we have a situation where the Act in its first breath declares that the doing of certain things amounts to the practice of dentistry, and in the next breath says that if it is done as a result of a work order issued by a dentist, then it is not practicing dentistry."

They further say:

"It is inconsistent with truth and it is inconceivable that a court whose duty it is to give rational interpretation to a Legislative Act would find that the replacement of a tooth slipped out of a plate in one instance would be practicing dentistry, and in another instance it would not. In both events it is simply a mechanical process and no amount of rationalizing can make anything else of it."

Under plaintiff's Proposition VI, such activity is characterized as a "piece of manual and mechanical work upon inert materials requiring specialized mechanical skill \* \* \*" and is "in no wise" related "to public health, morals or safety." Under this Proposition, plaintiff's counsel also refers to provisions of the Act that make it a criminal offense for a dental laboratory, and technicians, to restore teeth to their places in dental plates at the direction of their wearers. They say, in substance, that the fact that such work would be perfectly lawful, under the same Act, if done on the work order of a dentist, makes of the Act

an instrument for " 'invidious discrimination' between * * * (workers) of the same class, having the same qualifications, the same skill, the same equipment and the same experience; and constitutes a denial of equal protection of the laws under the principles laid down in Skinner v. State of Oklahoma ex rel. Williamson, Attorney General, 316 U.S. 535, 536, 62 S.Ct. 1110, 86 L.Ed. 1655, wherein Oklahoma's Habitual Criminal Sterilization Act was declared unconstitutional.

We can uphold neither of these arguments. Plaintiff specifically recognizes that the practice of dentistry is an occupation affecting the public health and welfare, and, under the State's police power, is subject to reasonable regulation; but he vehemently insists both that a dental laboratory technician's work cannot be so classified, and that the complained of provisions of House Bill 697 constitute unreasonable regulation of it. We do not agree. We think there is a sufficient relation between the work of a dental laboratory technician, and the public health and welfare, that we cannot say the Legislature has acted arbitrarily or capriciously in attempting to regulate it by law.

We know, as a matter of rather common knowledge, that mastication of food by chewing with the teeth is an integral part of, or related to, the human body's digestive process. We also know that the malformation, maladjustment and ill-fitting of false teeth may not only result in poor digestion but may cause physical discomfort, nervousness, and mental anguish, or even disturbance, generally, and specifically cause lesions in the mouth and gums that may lead to infection and serious bodily illness. In this connection, see Lees v. Oster, 8 Utah 2d 141, 329 P.2d 648, 649; Holcomb v. Johnston, 213 Ga. 249, 98 S.E.2d 561, 563; United States v. Patterson, D.C.N.D.Ill.E.D., 155 F.Supp. 669, 672, citing People ex rel. Chicago Dental Society v. A. A. A. Dental Laboratories, 8 Ill. 2d 330, 333–334, 134 N.E.2d 285, 288. There is an actual, factual basis for courts' determining, as they have, that " * * *.

the making, fitting and repair of artificial dentures constitutes a calling intimately concerned with the public health." Amsel v. Brooks, 141 Conn. 288, 106 A.2d 152, 157, 45 A.L.R.2d 1234. It is not only necessary that such work be done by one having mechanical skill, but it should be done under the supervision of one having knowledge of subjects in which dentists are educated and trained, such as the physiology of the teeth and the parts of the human body which their functioning may affect, or be related, in varying degrees of intimacy or remoteness. The same may be said of the Act in question, as was said of the Federal Denture Act, 18 U.S.C.A. § 1821 in United States v. Johnson, 7 Cir., 149 F.2d 53, 55, certiorari denied 326 U.S. 722, 66 S.Ct. 28, 90 L.Ed. 428, to-wit:

"* * * It falls within the category of legislation for the public health which is a prime, as well as worthy, purpose of the government."

Whether the Act in question be a desirable, wise or practical one is not for us to say. In Application of Oklahoma Capitol Improvement Authority, Okl., 355 P.2d 1028, 1029, we held:

"In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the Act. There is a presumption that the Act is constitutional."

Nor, in view of the foregoing, do we find any ambiguity, or irrationality, in Section 20's subparagraphs "(n)" and "(f)", supra. What we have already said demonstrates good reason for allowing dental technicians to do the things contemplated by subparagraph (f) under the supervision, or at the direction (work order), of a dentist, while, in effect, prohibiting them from

doing the same things described in subparagraph (n) directly (or without supervision of a dentist) for the users or prospective users, of prosthetic "dentures * * * bridges or other substitutes for natural teeth * * *" Plaintiff's arguments that an interpretation of these provisions which permits dental laboratory technicians to do such things on the work order of dentists, while preventing them from doing the same things without such an order, divides equally qualified and competent members of the same class, or vocation, into arbitrary classes, and discriminates in favor of one against the other, denying the two classes equal protection under the law, have—like most of his other arguments—been previously answered directly, or by analogy, in other supreme courts. See Annotations, to Amsel v. Brooks, supra. The provisions here questioned are similar, in the respects now dealt with, to Section 5 of the Illinois Dental Practice Act, S.H.A. ch. 91, § 60 involved in Lasdon v. Hallihan, 377 Ill. 187, 36 N.E.2d 227. Subparagraph (9) of that section is identical in wording to subparagraph (n), supra; While, under subparagraph (f) of said Act the doing of the same things which subparagraph (n), in effect, proscribed as outside the realm of practicing dentistry—when done "upon order or prescription of a licensed and registered dentist"—is exempted from the Act. We will not unnecessarily lengthen this opinion by quoting the Illinois Court's answer to the argument that said Act's Section 5 created "an unjust discrimination" between two classes of persons, or laboratories, doing the same work (36 N.E.2d 232) but deem it sufficient to say that we consider a like answer here adequate to dispose of plaintiff's similar arguments.

Plaintiff's argument that H.B. 697 vests monopolistic control of the vocation of dental laboratory work, in the dentists of the State, and constitutes a despotic interference with, and unconstitutional abridgement of, persons' inalienable liberty, and property right to earn a living, and to enjoy the gains of their own industry in the vocation of their choice, are similar, in their underlying elements, to those advanced in Weill v. State, 250 Ala. 328, 34 So.2d 132, 138. There, Section 83 of the Act involved contained a "proviso" similar, in effect, to the hereinbefore quoted "proviso" of which subparagraph (f), supra, is a part. There, the court, in speaking of such right of each individual, said:

"* * * as said in State v. Polakow's Realty Experts [243 Ala. 441, 10 So.2d 461], supra: 'This universal right is subject to the paramount right of the government as a part of the police power to impose such restrictions as the protection of the public may require. "The right of reasonable regulation is a modification of the sweeping generalization that every person has a right to pursue any lawful calling." 11 Am.Jur. Sec. 337.'

\* \* \* \* \* \*

"We think that the legislature could have legally prohibited any one not a licensed dentist from doing the work authorized in the proviso, * * * and it is not unusual for a statute to provide that a person performing an act under instructions and with the authority of one duly licensed to do the act is not guilty of practicing without a license. A medical student may prescribe under the supervision of a preceptor. State v. Collins, 178 Iowa 73, 159 N.W. 604. A registered student of a licensed dentist may assist his preceptor in dental operations made in the presence of and under the direct and immediate supervision of the latter. State Board of Registration & Examination in Dentistry v. Terry, 73 N.J.L. 156, 62 A. 193. An ordinary nurse may perform services under a duly qualified surgeon. In re Carpenter's Estate, 196 Mich. 561, 162 N.W. 963. A trained nurse may administer an anesthetic under the supervision of a surgeon. Frank v. South et al., 175 Ky. 416, 194 S.W. 375, Ann.Cas. 1918E, 682.

\* \* \* \* \* \*

"It (Section 83) does permit the dentists to avail themselves of the services of a non-dentist, and of commercial dental laboratories, provided that the work is done on the dentist's instructions and authorization, and that the completed product is delivered to the dentist. All persons not licensed to practice dentistry may engage in this work on exactly the same basis.

\* \* \* "Here the occupation is auxiliary to the practice of dentistry, and itself constitutes that practice, unless engaged in the manner prescribed by the statute. Appellant cannot be heard to complain that no dentist was or is willing to supervise or direct his practice, and that, therefore, he was unconstitutionally deprived of the right to practice as a dental laboratory technician. See 16 C.J.S. Constitutional Law § 505; In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, 836.

"Section 83, supra, does not deny to appellant, or anyone else so situated, any right guaranteed by the Fourteenth Amendment to the Constitution of the United States, and by Article 1, section 6 of the 1901 Constitution of Alabama."

As indicated by our quotations therefrom, we think certain principles followed in Lasdon v. Hallihan and Weill v. State, supra, may also be followed here.

■■ Nor, in our view of the relation between dental laboratory work and public health, and upon consideration of the differences between Oklahoma and Idaho legislation as to that vocation, can we regard the case of Berry v. Summers, 76 Idaho 446, 283 P.2d 1093, (on which plaintiff relies) as persuasive. In this State, we do not have the legislative background recognizing that vocation as entirely "independent" of dentistry, as Idaho was said to have in that case; and, as far as we know, that decision stands virtually alone in its refusal to recognize the very real re-lationship between the products of dental laboratories and of dental technicians' labor, and the public health. (In this connection, see the Annotations, supra, and Lees v. Oster, supra, and State v. Anderson, 54 Wash.2d 156, 338 P.2d 740, 742). In view of the foregoing, we are of the opinion that plaintiff's contentions concerning our State's present Dental Act (H.B. 697, supra) in connection with which he has submitted arguments and authorities under his Propositions II–IX, both inclusive, are without substantial merit.

Plaintiff's Propositions IV and X are respectively as follows:

"House Bill 697, and particularly Section 43 thereof, is void insofar as it attempts to require dental laboratory technicians and dental laboratories to produce books, papers and documents before the Board of Governors in actions involving revocation, suspension or reproval of licenses held by technicians and laboratories."

"The criminal provisions of Section 51 of House Bill 697 are void and unenforceable, especially as to second offenses, for the reason that the minimum and maximum punishments are not prescribed as required by the Constitution and by law."

While paragraph "XVII" of plaintiff's petition alleged that " \* \* \* defendants \* \* \* will, unless restrained, attempt to enforce all of the terms and provisions of said House Bill #697 insofar as the same pertain to the pursuit of the vocation or profession known as dental laboratory technicians and the operation of dental laboratories \* \* \* ", (emphasis ours) he nowhere alleges or claims that he has either sought, or obtained, "a permit \* \* to conduct the business of a dental laboratory within the State of Oklahoma" under the Act's Section 36, supra, or that any case "involving revocation, suspension or reproval \* \* \*." has been brought against him, or anyone else, under said Act's Section 43, and any criminal prosecution under its Section 51. In paragraph "XX" of

plaintiff's petition, he also alleges that unless the court's equity jurisdiction "* * * is invoked, he and others similarly situated will suffer great and irreparable damage * * *". The mere pleading of such conclusions is not enough, Speaker v. Board of County Com'rs, Okl., 312 P.2d 438, 442. In the cited case, we said:

"Defendant's demurrer admitted only facts well pleaded, and the inferences or conclusions to be reasonably and logically drawn therefrom. It did not admit the conclusions of the pleader *unattended by alleged facts to support them,* which conclusions were mere surplusage and insufficient in themselves to invoke the court's equitable powers to grant her the extraordinary relief she prayed for. (Citing authorities)." (Emphasis ours.)

In the absence of any allegation of fact in plaintiff's petition, and the amendment thereto, demonstrating that he, and those similarly situated, are now in a position to be directly or immediately affected by the provisions of Sections 43 and 51 of the Act, we can only conclude that, whatever defects they may have, if any, are, as to them, purely hypothetical or abstract. As said in Winberry v. Hallihan, 361 Ill. 121, 197 N.E. 552–557: "To raise the constitutionality of a particular provision of a statute the complainants * * * must be directly affected by the provision attacked." This court adheres to the same rule. See State ex rel. Commissioners of Land Office v. Cities Service Oil Co., Okl., .317 P.2d 722; Speaker v. Board of County Com'rs, supra, citing Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 165, 77 P.2d 83, 95. See also Champlin Refining Co. v. Corporation Comm., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062; 11 Am.Jur., "Constitutional Law", secs. 93, 111, 112. We therefore reserve judgment on the questions sought to be presented in plaintiff's Propositions IV and X.

As we have found in none of the arguments, properly presented herein, sufficient cause for reversing the judgment of the trial court, said judgment is hereby affirmed.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH, J., dissents.