No. 21394.

THE PEOPLE OF THE STATE OF COLORADO *v.*
DAVID GLADSTONE STARK AND LARRY GUY PEACOCK.
(400 P.2d 923)

Decided April 12, 1965.

60

Duke W. Dunbar, Attorney General, John E. Bush, Assistant, Joseph J. Dolan, District Attorney, Stanley F. Johnson, John R. Mack, Lawrence B. Robinson, Deputy District Attorneys, for plaintiffs in error.

Ryan, Sayre, Martin & Brotzman, Zuckerman & Zerobnick, Jim R. Carrigan, Fugate, Mitchem & Hoff-

MAN, HUTCHINSON & HUTCHINSON, ZARLENGO, ZARLENGO, SEAVY & MULLIGAN, for defendants in error.

THEODORE A. BORILLO, Chief Deputy District Attorney, Denver, Amicus Curiae, Attorney for Colorado District Attorneys' Association.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE people of the State of Colorado caused this writ of error to issue in order that this court might pass upon the constitutionality of 48-5, C.R.S. 1963, in so far as the provisions of that article prohibit the possession, use, and sale of the narcotic drug "cannabis" (commonly known and frequently referred to as marijuana).

Defendants in error were accused of violating the aforementioned statute in an information filed in the district court of Boulder county. By motion to dismiss, they challenged the constitutionality of the Act in so far as it purported to prohibit the possession of cannabis. The trial court heard evidence offered by them in support of their motion. At the conclusion of the hearing, the trial court held the Act unconstitutional in so far as it purported to include cannabis within the coverage of the statute; the information was dismissed; and the defendants named therein were discharged.

The sections of the Act with which we are concerned are found in Chapter 48, Article 5, C.R.S. 1963. The pertinent sections of the Act are as follows:

Section 1, (14) (a) " 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, keto-bemidone, and every other substance neither chemically nor physically distinguishable from them, and any other drug to which the federal narcotic laws may apply, and any drug found by the state board of health, after reasonable notice and opportunity for hear-

ing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, from the date of publication of such finding by said state board of health."

Section 2. "It shall be unlawful for any person to manufacture, possess, have under his control, receive, sell, buy, conceal, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article, or to conspire to commit any of the acts prohibited."

Section 20 (5). "Any person within the state of Colorado who shall be addicted to the use of narcotic drugs, or shall use narcotic drugs, or shall be under the influence of narcotic drugs, as defined in this article, except when such drugs are or have been administered by or under the direction of a person licensed and duly authorized by law to prescribe and administer narcotic drugs for bona fide medical needs, is a disorderly person and, shall, upon conviction, be confined in the county jail not less than six months, nor more than one year."

For a violation of section 2 above, penalties are provided in section 48-5-20, C.R.S. 1963, as follows: A first offense is punishable by a fine of up to $10,000.00 and imprisonment for not less than two nor more than fifteen years. For a second offense the fine is the same but imprisonment must not be less than five nor more than twenty years. A third, and all subsequent offenses, is punishable by terms of not less than ten nor more than thirty years. Anyone who induces or attempts to induce a person 25 years of age or under to use or carry a narcotic drug or to violate any provision of the Narcotic Drugs Law is punishable by life imprisonment for the first offense, and, for the second offense, by either life imprisonment or the death penalty.

The trial court in entering the judgment of dismissal upon the ground that the statute was unconstitutional, justified the same in the following language:

"The evidence offered by the witnesses this morning

is indeed impressive, and cannot be wholly ignored. It does raise a question as to the inclusion of Cannabis within the definition of narcotic drugs when it names specifically other drugs and then says, '. . . and any drug found by the State Board of Health to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine.'

"That argument of course carries some weight. However the argument that is more impressive to me is the reference in the definition of the State of Colorado that says, '. . . and any other drug to which the Federal Narcotic Laws may apply.'

\* \*. \*

"I cannot help but come to the conclusion that the Statute is unconstitutional, especially on these last two arguments, and feel that it is an improper delegation of powers, to define a crime or state what shall be a crime for which the penalty will apply, and giving to the State Board of Health that power.

"The case in Colorado of Casey vs. the People states the Rule, and I feel that we are bound by that rule, that this was and is an unconstitutional delegation of power to make the law, and unconstitutional also when it concludes with the wording, or includes the wording, ". . . any other drug to which the Federal Narcotic Laws may apply.'

"ACCORDINGLY, I find and determine and adjudge that the Statute of Colorado, not being severable, is unconstitutional. That is the Judgment of the Court."

It is clear from the foregoing that the portion of the statute which the trial court found to be fatal to the whole, was that part thereof which included within the coverage of the law, "\* \* \* and any other drug to which the federal narcotic laws may apply, and any drug found by the state board of health, after reasonable notice and opportunity for hearing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, \* \* \*." This above-quoted language became a

part of the law in 1957 by amendment to the pre-existing statute which in all other pertinent respects remained as it was originally enacted.

 The trial court erred in holding that the amendment was not severable. In fact, the contrary is true. The tests of severability are clearly stated in *City and County of Denver v. Lynch,* 92 Colo. 102, 18 P.2d 907, and were approved in *Riss v. McCaslin,* 144 Colo. 133, 355 P.2d 304. Assuming, without so deciding, that the reference to the federal narcotic laws and the delegation of authority to the State Board of Health amounted to an unconstitutional delegation of legislative power, such a conclusion would not nullify the other portions of the statute which had been in the law for many years prior to the adoption of the amendment.

 There is another cogent reason why the trial court erred in entering the judgment of dismissal on the ground under discussion The defendants named in the information were not charged with an offense involving traffic in any drug which had been brought within the coverage of the statute by administrative act of the State Board of Health, or by reference to the federal narcotic laws. The drug involved in this case is "cannabis," and it is specifically placed in the prohibited category by act of the legislature. The defendants in the district court were not accused of any conduct which became unlawful by reason of action of the State Board of Health, or because of the content of any federal narcotics law. The applicable rule is stated in *Rinn v. Bedford,* 102 Colo. 475, 84 P.2d 827, where we find the following pertinent statement:

"* * * Secondly, no person is entitled to assail the constitutionality of a statute except as he himself is adversely affected. * * *" This statement was approved by this court in *Berman v. City and County of Denver,* 156 Colo. 538, 400 P.2d 434.

The foregoing disposes of the grounds upon which the trial court based its judgment. Counsel for defendants

in error argue at length that the judgment was correct for additional reasons (not specifically stressed by the trial court) to which we now direct attention.

It is argued that the classification of cannabis in the same category as addicting narcotic drugs is arbitrary and unreasonable, and denied the defendants the equal protection of the law and due process of law. The summary of argument on behalf of defendants in error contains the following as additional grounds for reversal of the judgment:

"II. The statutory declaration that cannabis is a 'narcotic drug' amounts to a conclusive presumption of fact contrary to actual, scientific fact. Defendants are charged, respectively, with use, possession or sale of 'narcotic drugs.' Were it not for the statutory definition of 'narcotic drugs,' the State would have to prove cannabis is a narcotic drug within the sense of the criminal statute, and the defendants would be able to prove that it is not such a narcotic. In thus erecting an irrebuttable presumption of fact precluding proof that the defendants are not guilty of the crimes charged, the statute denies due process of law.

"III. Excessive punishment for crime, including punishment unreasonably disproportionate to the seriousness of the crime, constitutes cruel and unusual punishment forbidden by both the state and federal constitutions. Cannabis is a nuisance, but not a grave menace as are the addicting drugs. The severe penalties, including long prison terms, life imprisonment, and the death penalty, perhaps properly applied to crimes involving addicting drugs, are excessively severe for offenses involving cannabis.* * * .

"IV. Two of the statutes here involved define what is in essence the same conduct as either a felony or a misdemeanor, at the option of the prosecutor, thus unconstitutionally delegating legislative power to him and denying the equal protection of the laws to the persons charged with the more serious offense."

■ With reference to the argument that inclusion of cannabis in the same category as addicting drugs such as coca leaves, opium, and other drugs more potent in destructive potential, is so arbitrary and unreasonable as to deny the defendants equal protection of the law and due process of law, we think it sufficient to say that the following decided cases hold to the contrary. *United States v. Eramdjian,* 155 F. Supp. 914 (S.D. Calif. 1957); *Spence v. Sacks,* 173 Ohio 419, 183 N.E.2d 363; *Gonzalez v. State,* 168 Texas Cr. 49, 323 S.W.2d 55. The statutes under consideration in the three cases last cited were in the same language as our own statute, and all of them are in the language of the Uniform Narcotic Drug Act.

■ We have held that a legislative classification is constitutional "which is reasonable and not arbritrary and which is based upon substantial differences having a reasonable relation to the objects or persons dealt with and to the public purpose sought to be achieved by the legislation involved." *McCarty v. Goldstein,* 151 Colo. 154, 376 P.2d 691, quoting with approval *Champlin Refining Company v. Cruse, Director of Revenue,* 115 Colo. 329, 173 P.2d 213.

■ We recognize that differences of opinion exist as to whether cannabis causes physical or psychological addiction. This fact is not material in determining what drugs may be included within the classification of "narcotic drugs" in an exercise of police powers by a state. The important and pivotal consideration is whether the classification bears a reasonable relation "to the public purpose sought to be achieved by the legislation involved." Clearly, the use of marijuana and other drugs identified in the Colorado statute presents a danger to the public safety and welfare of the community since they are clearly related to each other and to the commission of crime.

■ Counsel for defendants in error readily admit that cannabis is a dangerous drug and that it should be regulated. The evidence presented before the trial court left

no doubt of this matter. On cross-examination by the people, Professor Heim stated that cannabis could be considered a dangerous drug to some people in that it might induce them to become involved in antisocial behavior and that these people are "a very small percentage" of the people who use the drug, later stating that he had "no idea" how many people used the drug. On redirect-examination, Professor Heim stated that the use of cannabis "can be serious" depending upon the psychological predisposition of the user of the drug. He also stated that his prior testimony that a "small percentage" of people would become dangerous by the use of cannabis was "only a guess."

Joseph F. Moomaw identified himself as having been a member of the Denver Police Department since April 21, 1942, and that he currently holds the grade of Captain. He stated that he had been assigned to the laboratory section of the police department since November 12, 1942, and has been in charge of that section since April 1, 1956. He testified that during his experience in police science work he had examined close to 20,000 specimens of cannabis and that he had observed and come into contact with about 2,000 of the individual defendants in those cases dealing with cannabis. On cross-examination, Captain Moomaw testified that he considered cannabis to be a dangerous drug because of "the demonstrated ability of the drug . . . to create psychic disturbance and the fact that we find it associated in at least 30 per cent of our violent crimes, vicious crimes." The following appears in his testimony:

"There is some evidence to substantiate that perhaps the criminal mind has a propensity for Marijuana, rather than the Marijuana being creative — the creative agent itself, that is, but there are many cases on record of violent crimes, crimes against the person, wherein it is known that the agent or contributing agent was Marijuana."

■ Inclusion of "cannabis" in the statute prohibiting

traffic in narcotic drugs was a proper exercise of the police power by the legislature. It did not amount to an "unreasonable classification"; it did not deny equal protection of the law; and it did not deny due process of law.

With reference to the argument that the several offenses defined in the statute are punishable by "cruel and unusual punishments" we hold that until some person has been convicted of a crime and a sentence has been imposed which is then asserted to be "cruel and unusual" there is no justiciable question presented. No one would contend that the minimum sentence provided by statute for the offenses with which the defendants in error stood charged, would be "cruel or unusual." Generally, the matter of punishment for commissions of crime is a matter for determination by the legislature. Where there is a wide spread between the minimum and maximum punishment, whether any particular sentence is "cruel or unusual" is a matter to be determined under all the facts and circumstances surrounding each offense. Until the defendants in error have actually been sentenced in a "cruel or unusual" manner they cannot be heard to say that they or some other person might at some future time be subjected to "cruel or unusual" punishment. Other arguments advanced in support of the judgment are without merit.

The judgment is reversed and the cause remanded with directions to re-instate the information and to proceed to final disposition of the case upon the merits. This mandate follows for the reason that the discharge of the defendants in the trial court was very clearly the result of "an error in law." Article II, Section 18, of the constitution provides that:

"* * * if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."