No. 24911

The People of the State of Colorado, ex rel. Duke W. Dunbar, Attorney General of the State of Colorado, and The State Board of Dental Examiners of the State of Colorado v. Van Kogul, d/b/a Metropolitan Dental Laboratory

(501 P.2d 738)

Decided September 11, 1972.        Rehearing denied October 24, 1972.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Peter L. Dye, Assistant, for plaintiffs-appellees.

James B. Radetsky, Jules Ornstein, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The Attorney General brought this action on relation of the People of the State of Colorado and the State Board of Dental Examiners (State Board) pursuant to C.R.S. 1963, 42-1-32(2) to enjoin Van Kogul, d/b/a Metropolitan Dental Laboratory (Van Kogul) from practicing dentistry in violation of The Dental Practice Law of Colorado. C.R.S. 1963, 42-1-1, *et seq.* The trial court entered judgment for the State Board enjoining Van Kogul
"from repairing, constructing or reproducing prosthetic dentures, bridges, plates, or appliances to be used or worn as substitutes for natural teeth, without a prescription to do so from an individual licensed to practice dentistry in the State of Colorado, or committing any other act in violation of Chapter 42, Article I, C.R.S. 1963, as amended."
We affirm.

An employee of the Merchant Police, pursuant to request by the State Board of Dental Examiners, took a broken upper denture to the Metropolitan Dental Laboratory, 1612 Court Place, Denver, and requested that it be repaired. The person behind the counter accepted it, estimated the cost of

repair, the following day returned it in a repaired condition, and collected the cost of repair by accepting the personal check of the Merchant Policeman. Following this, a summons and complaint for injunction was served upon Van Kogul, pursuant to C.R.S. 1963, 42-1-32(2), alleging an unlicensed practice of dentistry. C.R.S. 1963, 42-1-4 defines practice of dentistry:

"(1)(a) Any person shall be deemed to be practicing dentistry who:

"(e) Furnishes, supplies, constructs, reproduces or *repairs any prosthetic denture, bridge, appliance, or any other structure to be worn in the human mouth, except on the written prescription of a duly licensed and practicing dentist,* or professionally places such appliance or structure in the human mouth, or adjusts or attempts or professes to adjust the same, or *delivers the same to any person other than the dentist upon whose prescription the work was performed, except when authorized in writing by the dentist or his agent;* . . . ." (Emphasis added.)

Van Kogul, in his motion for new trial raised two points: "1. The evidence was insufficient to support findings, conclusions, and decision of the Court in that the identity of the defendant was not shown to be that of the party whose conduct was complained of, and no evidence was introduced from which an inference could properly be made as to such identity.

"2. The Court committed an error of law in that the Court failed to rule as unconstitutional the statutory provisions prohibiting the repair (as opposed to designing the configuration) of a prosthetic denture without a dentist's prescription, such prohibition being an unreasonable exercise of the police power of the state."

## I. Identity

██ The issue here as to identity is limited to whether the particular individual who was present in the Metropolitan Dental Laboratory when the Merchant Policeman brought the dentures in was Van Kogul or an employee. So far as the injunction is concerned, it makes no difference. Van Kogul

did not deny that he was the owner of or that he conducted the business in the name of Metropolitan Dental Laboratory. There is no question but that the work done by the person in charge of the laboratory was in violation of the Dental Practice Law. Van Kogul could not avoid the injunction even were it to appear that the person who violated the law was an agent.

## II. Constitutionality

■ The real issue is whether the act is constitutional. That issue was decided by the court adversely to the defendant and we agree.

Van Kogul's argument on unconstitutionality focuses on *Berry v. Summers,* 76 Idaho 446, 283 P.2d 1093 (1955). In that case the Idaho Supreme Court struck down a 1953 amendment to the Idaho Code, § 54-901, which required all work on dental prosthetics to be pursuant to authorization of a duly licensed dentist. The court held that since prior statutes had recognized the existence of dental laboratory technicians and had permitted them to work on "inert matter," independently of dentists, the amendment — which required authorization by a dentist — deprived those technicians of "vested rights."

Following the first *Berry* case, the Idaho legislature passed a second amendment which forbade dental technicians from doing any act "with respect to dental prosthetic appliances which requires or necessitates the presence, aid, assistance or cooperation of the person intended to be the user or wearer . . . ." The Idaho Supreme Court upheld this second amendment. *See also Berry v. District Court,* 91 Idaho 600, 428 P.2d 519 (1967) and *Board of Dentistry v. Barnes,* 94 Idaho 486, 491 P.2d 1258. Van Kogul would have us follow the lead of the Idaho Supreme Court and hold that Section 42-1-4 is unconstitutional insofar as it prohibits work on inert matter and does not involve fitting or adjusting.

■ In general, a statute will be presumed constitutional unless the contrary clearly appears. This is particularly true where the statute is designed to protect the health and safety of the public. *United States Building & Loan Association v.*

*McClelland,* 95 Colo. 292, 36 P.2d 164, *cert. denied* 294 U.S. 706, 55 S.Ct. 351, 79 L.Ed. 1241 (1934). The legislature may devise *reasonable* schemes for regulation of activities which affect the health and safety of the public. The scope of judicial review is limited to a determination whether or not the particular regulation is reasonably related to such health and safety. *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 P. 132. C.R.S. 1963, 42-1-1 declares the objects and purposes of Chapter 42, Article 1 to be as follows:

"The practice of dentistry in the state is *hereby declared to affect the public health, safety, and welfare* and to be subject to regulation and control in the public interest. It is further declared *to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public* and that only qualified dentists be permitted to practice dentistry in the state. All provisions of this article relating to the practice of dentistry and dental hygiene shall be liberally construed to carry out these objects and purposes." (Emphasis added.)

The scheme to regulate prosthetics simply requires that all work on dental prosthetics be prescribed by a licensed dentist. This is similar, if not identical, to the regulation of dental prosthetic work in most other states. Nearly every state covered in our research requires either (1) that the dental laboratory technician receive his work from, and return his work to, a dentist, or (2) that a dental technician perform work only pursuant to a dentist's prescription, or (3) both of the above. Idaho is apparently the only state that has held this regulatory scheme unconstitutional.

A number of older cases upholding this sort of standard are discussed in *Annot., Prosthetic Dentistry — Regulation,* 45 A.L.R. 2d 1243, § 4(a). Later cases are legion. In *Lees v. Oster,* 8 Utah 2d 141, 329 P.2d 648 (1958), the court pointed out that this is indeed a regulatory system to protect not only the users of dental prosthetics (the public), but also the dental profession.

". . . We believe the public interest demands assurance that

the experienced and tested eyes and guiding hands of a licensed practitioner should control the use of prosthetics from manufacture to mastication, under familiar principles of agency and the police power, where authority and responsibility more nearly can contribute to the health and safety of the community."

In *People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.,* 8 Ill. 2d 330, 134 N.E.2d 285 (1956), the court held that this type of regulation was reasonable and related to the health and safety of the public.

"Any person is free to become a dental laboratory technician. The statute places no artificial restraint upon him. His success is determined by the normal process of competition. By the statute his direct dealings are limited to those who are peculiarly fitted by education and training to judge the quality of his work. But in this restriction there may be protection for members of the public who lack the capacity to make an informed appraisal of the quality and value of the product, and protection as well for the economic independence of a profession serving public health needs. The General Assembly has regarded the limitation in the statute as necessary to protect the public and the dental profession, and we are unable to say that its determination is entirely without foundation."

So also in *Thrasher v. Board of Governors,* Okla., 359 P.2d 717 (1961), the court stated:

"We know, as a matter of rather common knowledge, that mastication of food by chewing with the teeth is an integral part of, or related to, the human body's digestive process. We also know that the malformation, maladjustment and ill fitting of false teeth may not only result in poor digestion but may cause physical discomfort, nervousness, and mental anguish, or even disturbance, generally, and specifically cause lesions in the mouth and gums that may lead to infection and serious bodily illness."

■ Though *Lees v. Oster, supra,* and *Thrasher v. Board of Governors, supra,* both dealt specifically with laboratories that were making rather than simply repairing dentures, the

statutes there in question restricted repair as well as manufacture. Under the circumstances of this case, there is no valid distinction between repair and construction. It is possible that broken or damaged dentures, if repaired without the supervision of a dentist, may well result in the same harm and injury discussed in the language above. *People ex rel. Chicago Dental Society, supra,* did deal specifically with the issue of repair. So did *State v. Anderson,* 54 Wash.2d 156, 338 P.2d 740 (1959); *Poirier v. Board of Dental Examiners,* 78 Nev. 232, 370 P.2d 960 (1962); *Holcomb v. Johnston,* 213 Ga. 249, 98 S.E.2d 561 (1957). With the exception of *Holcomb,* all of the foregoing cases, which uphold regulation of the manufacture and repair of dental prosthetics, cite and disapprove the *Berry v. Summers* rationale.

The defendant cites *Jacobs v. Board of Dental Examiners,* 189 Cal. 709, 209 P. 1006 (1922), for the proposition that a proper regulation would simply restrict the dental laboratory technician from doing any work inside the user's mouth. California does not adhere to this rule. *See Board of Dental Examiners v. Jameson,* 64 Cal.App.2d 614, 149 P.2d 223 (1944).

We believe that the cases set forth above are more compatible with our views on reasonableness under the police power than *Berry v. Summers, supra.*

The judgment is affirmed.