The People of the State of Colorado v. Arron Ray Summit

No. 25933

The People of the State of Colorado v. William Kent Burgin

No. 25619

The People of the State of Colorado v. Steve Schowalter

No. 25740

The People of the State of Colorado v. Dennis Calvin Pack

(517 P.2d 850)

Decided January 7, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, William D. Neighbors, Deputy, Lee J. Belstock, Deputy, for defendant-appellant Arron Ray Summit.

Dufford, Ruland & Williams, Laird T. Milburn, for defendant-appellant William Kent Burgin.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant Steve Schowalter.

Joseph Saint-Veltri, for defendant-appellant Dennis Calvin Pack.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

These cases were consolidated on appeal to this court. Convicted of offenses involving possession or sale of marijuana under the Colorado statutes, each defendant complains that he has suffered the consequences of a felony conviction and the heavier sentence provided because marijuana (cannabis sativa) has been classified as a narcotic drug, C.R.S. 1963, 48-5-1(14). Defendants point out, in contrast, that other drugs classified by our statutes as merely hallucinogenic or dangerous, 1969 Perm. Supp., C.R.S. 1963, 48-8-1(4) and (5), are treated as misdemeanors.

The common issue presented by each defendant is whether, considering the present state of knowledge about the comparative natures and effects of marijuana and the hallucinogenic and dangerous drugs, the continued classifica-

tion of marijuana as a narcotic rather than a dangerous or hallucinogenic drug is an unreasonable legislative classification, the consequences of which deny these defendants the equal protection of the laws. We have ruled on this question on two previous occasions, *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969); *People v. Stark,* 157 Colo. 59, 400 P.2d 923 (1965). Both times, the question was answered adverse to the arguments of defendants in those cases and contrary to the contentions presented here again. Guided by a strong sense of judicial restraint, we again reach the same result and affirm these convictions.

We reach this result reluctantly, noting the opinion of our respected colleagues on this issue backed by respectable medical and psychological evidence that marijuana is not a narcotic and is less harmful than many drugs which result in lesser punishment. Indeed, our only measurable difference of opinion with those who dissent from the majority is our view of the role of this court as constitutional arbiter, which is well defined in our past decisions.

As we are but one of three branches of government in this state, Colo. Const., art. III, we have said on more than one occasion that we do not substitute our judgment for that of the legislature. The legislature is an elected body with full accountability to the democratic process. It is equipped through its legislative council, its interim study committees, and its standing committees with the means to engage in extensive fact-finding processes which the judicial system could never duplicate.

Accordingly, the following principles guide our review of constitutional attacks on legislation: Firstly, we presume that a statute is constitutional. *Allen v. Bailey,* 91 Colo. 260, 14 P.2d 1087 (1932). Secondly, one who assails a statute bears the burden of showing it is unconstitutional. *Colorado Chiropractic Ass'n. v. Colorado,* 171 Colo. 395, 467 P.2d 795 (1970). Thirdly, the limited standard which all laws must meet in order to be constitutional is only that, assuming it does not infringe a fundamental right, *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972), it furthers a legitimate

governmental purpose. *People ex rel. Dunbar v. Kogul,* 179 Colo. 394, 501 P.2d 738 (1972). Finally, where the equal protection clause is invoked, there need only be a rational basis to uphold a statute. *Wheeler v. Rudolph,* 162 Colo. 410, 426 P.2d 762 (1967).

▮ The court's approach of the issues, therefore, is normally a narrow one, and we view the arguments presented herein as falling short of establishing, beyond a reasonable doubt, that the classification of marijuana is unconstitutional.

## I.

Essentially, the statutes of this state providing criminal sanctions for drugs deemed to be harmful to society contain two categories: (1) narcotic drugs, which include heroin, cocaine, opium, morphine and marijuana; and (2) dangerous and hallucinogenic drugs, which include amphetamines, LSD, barbiturates and any such similar mixture. The basis for the distinguishing characteristic between the two categories is the nature of the drugs. As our statutes note, a drug is narcotic when its use results in a physical dependency or addiction. C.R.S. 1963, 48-5-1(14); *People v. McKenzie, supra; People v. Stark, supra.*

The distinction between narcotics and other drugs, carrying as they do greater penalties, is certainly justified. Unlike those drugs which are merely dangerous or hallucinogenic, narcotic addiction inevitably results in a drug habit which permeates every facet of the addict's life. This physical dependency, moreover, is coupled with an increased tolerance for the drug, so that the dosage once required to meet the addict's needs becomes insufficient; to maintain his habit an addict must increase his dosage. Each time an addict is without his drug, he encounters a terrifying physical and emotional insecurity. He must have his drug to survive. Ironically, this dosage of a narcotic drug often leads to death and personal destruction. *See J. H. Jaffe,* "Drug Addiction and Drug Abuse" in *The Pharmacological Basis of Therapeutics* (L.S. Goodman and A. Gilman ed. 1965). That these drastic personal and social consequences justify classification

of heroin, opium and morphine as narcotic drugs punishable as a felony is beyond medical question. Here, however, we are faced with legislative statement that marijuana is a narcotic. As we note *infra,* the overwhelming weight of authority supports a finding that marijuana use does not result in physical addiction, albeit it can and does create psychological addiction, which can result in a craving for the drug.

Thus, the label which the legislature wishes to give to marijuana is not the test of the constitutionality of the statute. Some authorities choose to label it an "abusive" drug. Counsel for the defendants agree that the drug is one which under the police power for the protection of the health and welfare of society is a proper subject of legislative control. There is also no dispute that its sale and use can be proscribed and that in a separate law and with a classification of its own — under whatever name — it could be subject to the same restrictions and penalties.

Because it therefore is a matter strictly for the legislature, we exercise judicial restraint in refusing to strike the present controls from the statutes.

II.

Nevertheless, from the legislative history of the present classification, there is cast severe doubt on its continued validity. Marijuana was first classified as a federal narcotic in 1937. 26 U.S.C. 4741 *et seq.* (1937). That finding, it has been established, was based largely on the earlier testimony of the then head of the Federal Bureau of Narcotics. *Anslinger, H.J., Hearings Before The Committee on Ways and Means,* House of Representatives, 75th Congress, 1st Sess. on H.R. 6385 (1937); *J.K. Kaplan, Marijuana: The New Prohibition* 96 (1970). No extensive medical testimony was taken to support that finding. Colorado's experience is not markedly dissimilar. Marijuana was first classified as a narcotic in this state in 1935. 1935 C.S.A., chap. 58, sec. 28(13) and (14). Though based on the statutory format of the National Commission on Uniform State Laws, the Commissioners, in turn, founded that legislative proposal on the identical source

of information: the Federal Bureau of Narcotics. R.C. Smith, "The Issue of Marijuana Regulation: U.S. Marijuana Legislation and The Creation of a Special Problem" in *The New Social Drug — Cultural, Medical, and Legal Perspectives on Marijuana* 111-112 (D.E. Smith ed. 1970). We are supplied with no legislative history which rebuts the inference that the federal scheme and the Colorado scheme are built on the same factual foundation. That this was a time when emotion jaded otherwise sound legislative judgment can be seen by the predominant literature of the times, which can be characterized as medically insufficient, if not absurd. *See E.A. Towell, On The Trail of Marijuana, The Weed of Madness* in *id.* 105-107. These then, are the origins of the classification of marijuana as a narcotic which are embodied in our present statutes.

The foregoing prompts us to point out that the presumption in favor of the constitutionality of a statute is predicated, in turn, on the presumption that the legislature is fully utilizing the fact-finding process. A rational basis must rest on more than history or experience, however long and detailed. When a question hinges on scientific fact, there should be some evidence that the legislature is in touch with scientific reality.

In both *People v. Stark* and *People v. McKenzie, supra,* we found ample support in the record to find that marijuana is a narcotic. The last of those decisions was in 1969, however, and a vast amount of information has come into being since that time. Without an authoritative exception, those medical authorities who have examined marijuana have concluded that it has no narcotic properties. *The First Report of The National Commission on Marijuana* (1972); *S. Cohen, The Drug Dilemma* (1972); J. Jaffe, "The Medical View" in *Marijuana* (E. Goode ed. 1969); R. Smith, "The Issue of Marijuana Regulation: U.S. Marijuana Legislation and the Creation of a Special Problem" in *The New Social Drug — Cultural, Medical and Legal Perspectives on Marijuana* (D. Smith ed. 1970); Cohen, *Marijuana: A Realistic Approach,* 114 Cal. Med. 7 (1971). The legal and sociological commen-

tators are in agreement as well. *J.K. Kaplan, Marijuana: The New Prohibition* 160 (1970); *N. Morris & G. Hawkins, The Honest Politician's Guide to Crime Control* 10 (1970); Burbidge, *Marijuana: An Overview,* 43 J. Sec. Ed. 197 (1969); Dichter, *Marijuana and the Law: The Constitutional Challenges to Marijuana in Light of the Social Aspects of Marijuana Use,* 13 Villa. L. Rev. 851 (1968); Kittrie, *Marijuana: The Right to Truth,* 23 S. Car. L. Rev. 361 (1971); Kratz, *Deterrents to Drug Abuse: The Role of Law,* 206 J.A.M.A. 1276 (1968); Rosenthal, *A Plea for the Amelioration of Marijuana Laws,* 47 Tex. L. Rev. 1359 (1969).

We note in those studies which also contain remedial suggestions, all call for congressional and state legislative action for reformation of the laws. None suggest it is a problem for the courts.

Scientific questions aside, we are not unmindful of the impact that the continued classification of marijuana as a narcotic has on the citizens, officials and resources of this state. A felony is the most serious of crimes; a felony conviction can result in the loss of liberty and the rights enjoyed by other citizens. The integrity — and obedience — of the laws of this state, moreover, rest, in the final analysis, on the consent of the People. They cannot consent to that which they do not believe to be true, nor can they believe what has been disproven in the scientific laboratories of this country. Police conduct aimed at the thousands of persons involved in the use and dispensing of marijuana, furthermore, has often given way to overzealous police practices which endanger the right of privacy. *See, e.g., People v. Weisenberger,* 183 Colo. 353, 516 P.2d 1128. Then, too, we are all too well aware of the heavy burden that the court and prison officials must bear to process the numerous felonies which this law precipitates. These considerations cannot be slighted by continued legislative inactivity.

### III.

In light of the foregoing analysis, we are aware that the issue is a decidedly close one. We believe that there is a

rational basis for some kind of classification and control of marijuana. At bottom, however, it is only the firm belief in the ability and integrity of the legislative process which requires us to, again, defer to the legislative body as the proper forum for the resolution of this controversy.

IV.

▮ In the Schowalter appeal was an additional argument that the penalties prescribed as violative of the Eighth Amendment to the United States Constitution. Schowalter was given a suspended sentence and granted probation.

We adhere to the ruling on this same question also raised in *People v. Stark, supra,* wherein we said:

"With reference to the argument that the several offenses defined in the statute are punishable by 'cruel and unusual punishments' we hold that until some person has been convicted of a crime and a sentence has been imposed which is then asserted to be 'cruel and unusual' there is no justiciable question presented. No one would contend that the minimum sentence provided by statute for the offenses with which the defendants in error stood charged, would be 'cruel or unusual.' Generally, the matter of punishment for commissions of crime is a matter for determination by the legislature. Where there is a wide spread between the minimum and maximum punishment, whether any particular sentence is 'cruel or unusual' is a matter to be determined under all the facts and circumstances surrounding each offense. Until the defendants in error have actually been sentenced in a 'cruel or unusual' manner they cannot be heard to say that they or some other person might at some future time be subject to 'cruel or unusual' punishment. * * *"

Additionally, there is now a provision for appellate review of sentences, 1971 Perm. Supp., C.R.S. 1963, 40-1-509, for all cases arising after July 1, 1972.

Judgments affirmed.

MR. JUSTICE GROVES and MR. JUSTICE LEE dissent.

MR. JUSTICE LEE dissenting:

I respectfully dissent.

The judiciary is obligated to examine the reasonableness of legislative classifications and to declare them unconstitutional· when it finds them to be so. In the words of Chief Justice Marshall, "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). No amount of deference to judicial restraint can discharge this obligation.

We have long recognized our duty to determine the reasonableness of legislative classifications. *Love v. Bell,* 171 Colo. 27, 465 P.2d 118; *Smith v. Farr,* 46 Colo. 364, 104 P. 401; *Platte, Etc., C. & M. Co. v. Dowell,* 17 Colo. 376, 30 P. 68. In discharging this duty, on occasion we may be called upon to engage in judicial fact-finding. This is both necessary and appropriate, for, as stated in *Chastleton Corp. v. Sinclair,* 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841:

"* * * A Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the *truth* of what is declared." (Emphasis added.)

*Cf. Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57; *Brown v. Board of Education,* 347.U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; *Block v. Hirsh,* 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865; *People v. Albrecht,* 145 Colo. 202, 358 P.2d 4.

As candidly conceded by the majority opinion, the overwhelming weight of eminent scientific authority points to the conclusion that marijuana is not a *narcotic drug.* In addition to the authority cited by the majority, *see: The First Report of the National Council for Civil Liberties: Drugs and Civil Liberties* (2d ed. 1968); *Dependence on Cannabis (Marijuana),* 201 J.A.M.A. 368 (1967); McGlothin & West, *The Marijuana Problem: An Overview,* 125 Amer. J. Psychiat. 370 (1968); Pet & Ball, *Marijuana Smoking in the United States,* 32 Fed. Probation 8 (1968); Weil, Zinberg & Nelson, *Clinical and Psychological Effects of Marijuana in Man,* 162 Science 1234 (1968). When it is so classified — contrary to the truth — the classification lacks a fundamental

rational basis and is unreasonable and is constitutionally offensive. And, when substantial felony punishments are imposed on the basis of an unconstitutional misclassification (as contrasted with the misdemeanor punishments imposed for the use and possession of *dangerous drugs*), those convicted and punished as felons, in our view, are denied equal protection of the law.

In spite of the mass of credible scientific information accumulated to the contrary − that marijuana is at most a *dangerous drug* and not a *narcotic drug* − our legislature, although it did ameloriate the punishment for possession of not more than one-half ounce of marijuana (1971 Perm. Supp., C.R.S. 1963, 48-5-20(6)), did not choose to properly reclassify marijuana. We foresee continued injustice resulting from future enforcement of this statute, which we believe to be fundamentally unfair and invalid.

When this Court decided *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232, and *People v. Stark,* 157 Colo. 59, 400 P.2d 923, it was not totally aware of the extent of the scientific knowledge concerning this subject. However, uncritical adherence to past judgments is no answer to the problem. It is our duty to assess the constitutional validity of legislative classifications in the light of scientific knowledge *presently available. Evans v. County Comm.,* 174 Colo. 97, 482 P.2d 968; *People v. McKenzie, supra.* This is particularly so in cases such as this. Legislation based upon the police power, even if legitimate when enacted, may become invalid when later knowledge and experience show it has become arbitrary. *Abie State Bank v. Bryan,* 282 U.S. 765, 51 S.Ct. 252, 75 L.Ed. 690.

In our view, this Court should join the growing number of jurisdictions which have recognized that, based on presently available scientific data, there is no rational basis for classifying marijuana as it has been classified here. *See e.g., People v. McCabe,* 49 Ill. 2d 338, 275 N.E.2d 407; *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878. *See also, Sam v. State,* 500 P.2d 291 (Okla. Cr. App.); *State v. Zornes,* 78 Wash. 2d 9, 475 P.2d 109.

Lest we be misunderstood, we hasten to point out that we agree with the view of the majority that marijuana, being a harmful drug, is a proper subject of legislative control under the police power. Our concern here is with its misclassification as a *narcotic drug* and the felony punishment related to this misclassification.

We would declare this aspect of the narcotic drug statute to be unconstitutional.

I am authorized to say that MR. JUSTICE GROVES joins in this dissent.