## No. 25961

## The People of the State of Colorado v. Hubert Steed

(540 P.2d 323)

Decided August 5, 1975. Amended petition for modification denied September 2, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was convicted on two counts: (1) possession for sale of a narcotic drug (marijuana) with the intent to induce and aid another unlawfully to use and possess it;[1] and (2) unlawful possession of a dangerous drug (amphetamine).[2] We reverse, remanding for sentencing for a lesser included offense under the first count and for entry of acquittal under the second.

Shortly after midnight of September 18, 1971, officers appeared at Apartment #3 at 1618 Ogden in Denver to execute a search warrant. The defendant and his cousin, Goodson, were co-tenants of this apartment. The officers knocked at the door and the defendant opened it. The officers identified themselves and their purpose, and the defendant slammed and locked the door. The officers attempted to kick the door down but, it being of sturdy construction, they were unsuccessful. A minute or two later another male individual opened the door and admitted them.

---

[1] Under 1971 Perm. Supp., C.R.S. 1963, 48-5-20; now Section 12-22-322, C.R.S. 1973.
[2] Under 1971 Perm. Supp., C.R.S. 1963, 48-8-2; now Section 12-22-404, C.R.S. 1973.

The officers walked into the living room and found nine people — two females and seven males. In describing them, one of the officers testified:

"Well, seven of them, the two girls and — well, actually, all nine were what is commonly referred to as street people or hippies. Two of these were more clean-cut than the rest. Well, I know why — they were Marine Corps deserters."

The persons in the living room were described as being 19 or 20 years of age and having the appearance of being "under the influence" of depressants or amphetamines. Some of them had fresh needle injection marks on their arms. In the living room, the officers found a clear glass coaster containing amphetamine.

The officers proceeded into the bedroom and there found the defendant and Goodson. Goodson was on the bed, apparently quite ill. In the bedroom the officers found two baggies of marijuana underneath the dresser, 12 baggies of marijuana in a heating vent, a brass pipe, a spoon, two syringes, needles, a small scale, a notebook and miscellaneous papers. All of the marijuana that was found weighed approximately 7.9 ounces.

The defendant was placed under arrest and given a *Miranda* warning. One of the officers testified that before they could ask him a question the defendant started talking. The officer testified:

"Well, the first statement he made was not in response to any question as such. Detective Tolte pulled the suspected marijuana . . . from inside the vent and at this time Defendant Tolte and myself were talking about arresting everyone and taking them down, and [the defendant] stated 'Don't arrest Frank,' who was Mr. Goodson, lying on the bed. 'It is my stuff. He is sick. Don't take him to jail. I'll take the blame for it.' And then I asked him who the people in the other room were, the other nine people that were there, and he stated he didn't really know, that they had just come over for a party and he could not tell us any of their names. . . ."

Prior to trial, the court granted defendant's motion for discovery for all "statements, written, recorded, and otherwise transcribed, or summarized in writing, made by the defendant." The defendant had not made any written statements but, as already indicated, made oral statements. In accordance with the discovery order the prosecutor answered as follows:

". . . I am advised that on September 19, 1971, in the City Jail, Hubert Steed stated he had only been dealing drugs for two months and the marijuana the officers recovered he had purchased on the street some time ago."

At the trial the police officer who testified as to the defendant's statements, stated:

"Well, he told me he was dealing in marijuana and — but it related more or less to a prior case, and so I didn't make specific notes of it for this case. It was another case we were interested in."

The court immediately called an *in camera* session, after which he instructed the jury that the answer was being stricken and that the jury should completely disregard it.

In a 58-page opening brief, plus 32 pages of attachments, the defendant urges the following four points:

1. The statute relating to marijuana as a narcotic drug is unconstitutional.

2. The prosecutor committed reversible error in not complying with Crim. P. 16 in that he did not furnish in advance of trial the oral statements made by the defendant.

3. The court should have ordered a mistrial by reason of the testimony of the police officer.

4. The verdicts were not supported by the evidence.

## I.

■ The defendant has advanced several grounds supporting his position that the Act making marijuana a narcotic drug is unconstitutional. Those that have real merit were submitted to us in *People v. Summit*, 183 Colo. 421, 517 P.2d 850 (1974). There, a majority of this court indicated that, at least so far as the reasonableness of the classification of marijuana as a narcotic drug was concerned, it had some serious doubts as to constitutionality. The majority expressed the view, however, that for the moment the judiciary should defer to the General Assembly, with its fact finding processes, to consider evidence such as was presented to us and other evidence; and also, to reach a considered judgment as to whether the statute should be changed. On this basis, constitutionality was upheld.

One of our number wrote a dissent in *Summit, supra*, in which the author of this opinion joined, expressing the view that the statute should be declared unconstitutional in that it treated marijuana as a narcotic drug. Ten weeks ago our opinion in *People v. Bennett*, 188 Colo. 429, 536 P.2d 42, was announced. Again, constitutionality was raised. It was there written:

"Maintaining deference 'to the legislative body as the proper forum for the resolution' of how best to advance the public health, safety, and welfare, we [in *Summit*] upheld the statute in question. . . . At least for the time being, we adhere to our holding in that case."

The two of us who dissented in *Summit* concurred in *Bennett* because of Canon 2 of the Colorado Code of Judicial Conduct which provides in part as follows:
"A judge should respect and comply with the law. . . ."
*Summit* stated the law for the time being and the dissenters therein must recognize it.[3]

Subsequent to the announcement in *Bennett*, House Bill No. 1027 has been adopted. This removes cannabis from the narcotic drug act (Section 12-22-301 *et seq.*, C.R.S. 1973) and designates it as a dangerous drug (Section 12-22-401 *et seq.*, C.R.S. 1973). We hold, therefore, that

---

[3]Perhaps a dissent may be written in a succeeding case or two, but in our minds the Code of Judicial Conduct should bury the idea of a judge dissenting on the same issue *ad infinitum.*

until House Bill No. 1027 became effective sometime in July 1975 the narcotic act embracing marijuana was constitutional, and on such effective date the question became moot as to subsequent conduct.

## II.

■ The defendant has given great emphasis to the failure of the prosecutor to comply with Crim. P. 16(h) by giving the defendant in advance a complete exposition of the oral statements of defendant to which the police officers would testify at trial. We do not reach the question because it is so obvious that the defendant was given a fair notice of the nature of the testimony to be produced, and we cannot find prejudice to the defendant in this particular. It is difficult to see a violation of the rule by the prosecutor, but assuming *arguendo* that there was not a meticulous compliance with it, to analogize with a civil case, it is *damnum absque injuria*.

## III.

■ There is no merit to the defendant's motions for mistrial on account of the police officer's testimony. Earlier we quoted his statement in court in which he referred to the nine people in the living room as street people or hippies, except that two who were Marine Corps deserters were more clean cut. Objection was made to the answer and the court sustained the objection. Then this answer became the basis for a motion for mistrial.

We quote from the Attorney General who, apparently with tongue in cheek, states in the brief:

"It would appear that the Commandant of the U. S. Marine Corps would have more reason to object, than defendant. In any event, the People fail to perceive the prejudice flowing from this alleged unresponsive answer."

We agree, at least with the second sentence.

The other bases for mistrial are equally without merit and the court did not abuse its discretion in overruling them. *People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974); and *People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973).

## IV.

■ The statute under which the defendant was charged in the first count, prohibiting possession for sale of a narcotic drug with intent to induce or aid another unlawfully to use and possess it, was designed to relate to "pushers" of narcotic drugs. The case here is analogous to *People v. Patterson*, 187 Colo. 431, 532 P.2d 342 (1975), and *People v. Bowers*, 187 Colo. 233, 530 P.2d 1282 (1974). There, as here, there was no competent evidence upon which a valid finding could be made that the defendant intended to induce and aid another to use and possess the drug. Certainly the relatively small quantity of marijuana seized in and of itself does not support a conclusion of intending to induce the use or even to sell it. C.R.S. 1963, 48-5-2[4] proscribes possession of a narcotic drug. As in *Patterson, supra*, and *Redden v. State* (Del.) 281 A.2d 490 (1971), the conviction of the defendant under the first count should be vacated, a

---

[4]Now section 12-22-302, C.R.S. 1973.

judgment of guilty for possession of a narcotic drug should be entered, and the defendant should be resentenced.

 There is a complete lack of evidence to sustain the conviction under the second count for possession of amphetamine. This was found in the living room among the nine people, and there is nothing to link its possession to the defendant. Here, the defendant is entitled to a judgment of acquittal. *Petty v. People*, 167 Colo. 240, 447 P.2d 217 (1968).

The judgment is affirmed in part and reversed in part, and the cause remanded with directions that the sentence under the count relating to possession for sale of a narcotic drug with intent to induce its use be vacated; that the defendant be resentenced for possession of a narcotic drug; and that judgment of acquittal be entered with respect to the other count under which the defendant was convicted.