**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Gary Michael WANDEL, Defendant-Appellee.**

**No. 82SA337.**

Supreme Court of Colorado, En Banc.

Feb. 19, 1985.

Rehearing Denied March 11, 1985.

---

Norman S. Early, Jr., Dist. Atty., Second Judicial District Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Stephen L. Alonzi, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, for defendant-appellee.

ERICKSON, Chief Justice.

The prosecution appeals from an order of the district court dismissing charges against the defendant for manufacturing a schedule II controlled substance in violation of section 18–18–105, 8 C.R.S. (1978). In dismissing the charges, the district court found that the police failed to exercise reasonable efforts to procure the presence of a confidential informant who assisted in the investigation of the defendant's alleged criminal activities, inasmuch as the police failed to establish and employ a "regular" method of maintaining contact with the informant. We reverse and remand with directions to reinstate the charges against the defendant, Gary Michael Wandel.

## I.

On January 20, 1982, an information was filed in Denver district court, alleging that the defendant manufactured a schedule II controlled substance (methamphetamine) in violation of section 18–18–105, 8 C.R.S. (1978). The police initially became aware of the defendant's activities in November 1981 through the assistance of Enoch Webster, a confidential informant. Webster had been arrested for burglary several months earlier, and he thereafter agreed to assist the police in various investigations in exchange for money and concessions on the criminal charge that had been filed against him.[1]

Webster introduced the defendant to Richard Thompson, an undercover detective, after informing Thompson that he knew the defendant to be a "cook"—a person knowledgeable in the production of amphetamines and other dangerous drugs. The prosecution alleges that arrangements

---

1. Payments in various amounts were made periodically to Webster beginning in late November 1981 and ending in early January 1982. Additional payments were made to Webster by the police during March 1982 in connection with a different criminal investigation. The burglary charge upon which Webster was originally arrested was dismissed upon the motion of the prosecution on January 11, 1982.

were made following a series of meetings between Thompson and the defendant, in which the defendant agreed to produce a quantity of methamphetamine. The prosecution stipulates that Webster was an eye and ear witness to each of the meetings between the defendant and the police, and that he was present when the methamphetamine was allegedly manufactured by the defendant.[2]

Webster's name was supplied to the defendant following the defendant's arrest and pursuant to a defense motion to disclose the identity of the confidential informant. However, the defendant's attempts to locate Webster throughout April and May 1982, with the assistance of Detective Thompson, were unsuccessful. The defendant thereafter filed a motion to dismiss the charges, alleging that the prosecution failed to exercise reasonable efforts to discover Webster's current address and to provide that information to him.

At the hearing on the defendant's motion to dismiss, Detective Thompson testified that Webster was a "transient-type individual" with no fixed address, who primarily "stayed at numerous different lower-rate motels, mostly on south Santa Fe [Drive in Denver]." Nevertheless, Thompson stated that throughout January and February 1982, Webster was assisting the police in a number of active investigations and that he was "constantly coming in and out of [Thompson's] office or calling," as he was instructed to do. Thompson stated that he reminded Webster each time he talked to him that he was an essential witness and that he would be required to testify at a later date.

Webster moved to Grand County, Colorado in March 1982. Although Thompson remained in personal contact with him throughout March, through the assistance of the Grand County Sheriff's office,[3] in early April 1982, Webster disappeared. Thompson stated that he thereafter attempted to locate Webster by checking numerous motels at which Webster had been known to stay; by contacting the Grand County Sheriff's office for information on Webster's whereabouts; by reviewing the Denver Police Department's suspect "contact" cards and consulting the National Crime Information Center for information of contacts with Webster by other law enforcement agencies; and by periodically checking bars and motels in the vicinity of Santa Fe Drive which Webster had been known to frequent. Thompson's attempts to locate Webster, however, were unsuccessful.

Based upon Thompson's testimony, the district court found that there was a reasonable basis in fact to believe that the informant was a likely source of relevant and possibly exculpatory information. Although the court found that the police initially exercised reasonable efforts to keep in contact with Webster through the payment of money and by monitoring him through active police investigations, the court stated that the police "at no time established a regular address for Mr. Webster and a regular 'phone number or, indeed, a regular way of contacting Mr. Webster." The court therefore concluded that, while Thompson's efforts to locate Webster were made in good faith, the police failed to exercise reasonable efforts to stay in contact with him. The charges against the defendant were, accordingly, dismissed by the district court.

## II.

■ We have held that when a timely request has been made by the defendant for information regarding the whereabouts of an undisclosed informant, law enforcement officers or the prosecution must show

---

**2.** Most, but not all, of the meetings between the defendant and the police were also recorded on audio or video tape.

**3.** Detective Thompson testified that he was contacted by the Public Defender's office near the end of March while Webster was in Grand County, to arrange an interview with Webster concerning an investigation that he provided assistance on in Jefferson County. Thompson stated that he contacted Webster and a telephonic interview between Webster and the public defender later occurred.

that they have made reasonable efforts to obtain useful information concerning the current location of the informant. *People v. Rodriguez*, 645 P.2d 851 (Colo.1982); *People v. Butcher*, 194 Colo. 22, 568 P.2d 1169 (1977). The duty to make a reasonable effort to keep in contact with an informant commences at the time the decision to file charges is made, and the failure of the police or prosecution to do so may result in the dismissal of the charges. *Rodriguez*, 645 P.2d at 853. In Colorado, the determination of whether the efforts to obtain information concerning the whereabouts of a confidential informant are "reasonable" is largely a question of fact to be resolved by the trial court. *Butcher*, 194 Colo. at 24, 568 P.2d at 1170.

■ In this case, the district court's finding that the police did not exercise reasonable efforts to locate and produce the informant rests largely upon the failure of the police to establish and employ a regularized method of maintaining contact with Webster. In our view, however, the imposition of a duty to employ such a "regular" system or method of tracking confidential informants is not mandated by our previous holdings and is not capable of implementation in a majority of criminal cases.

It is recognized that the discovery and prevention of criminal activity may be materially aided through the use of confidential informants, particularly in the investigation of illegal narcotics transactions and crimes against property. *See, e.g., Harrington v. State*, 110 So.2d 495 (Fla.App. 1959). Using confidential informants to assist police investigations, however, carries attendant dangers and difficulties. Confidential informants may often be professional criminals themselves or persons living on the fringe of criminal activity. As the facts of this case demonstrate, the conditions of stealth and deception underlying a criminal life style, the often precarious relationship existing between an informant and law enforcement officials,[4] and the informant's understandable fear of retalia-

tion may necessarily preclude the informant from establishing anything other than a transient and unpredictable lifestyle. Requiring the police to institute a regularized means of tracking or contacting informants under such circumstances may be an impossible burden. Even with an elaborate system to maintain contact with an informant, its ultimate effectiveness lies in the hands of the informant and beyond the control of the police.

Not only is the requirement of instituting a regularized means of maintaining contact with an informant impractical from the standpoint of actual implementation, but such a standard imposes a legal burden that is more stringent than that established by *Butcher* and *Rodriguez*. Our prior cases do not require the police or prosecution to employ efforts calculated to insure or guarantee the presence of an informant at the request of the defendant. The police need only employ "reasonable efforts" to maintain information concerning an informant's present whereabouts. The federal courts have similarly refused to impose a duty upon the police that is more stringent than the "reasonable effort" standard. *See, e.g., United States v. Hart*, 546 F.2d 798 (9th Cir.1976) (*en banc*), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977); *United States v. Hayes*, 477 F.2d 868 (10th Cir.1973); *United States v. Tatum*, 496 F.2d 1282 (5th Cir.1974); *United States v. Williams*, 496 F.2d 378 (1st Cir. 1974). The district court's reliance upon the need to employ regularized means to contact the informant in this case, in our view, is tantamount to requiring the police to insure the availability of the informant to the defendant upon request. Such a requirement is unwarranted both under Colorado law and in light of the often delicate nature of the police-informant relationship.

■ Inasmuch as the conclusion of the district court was based upon an improper and unduly stringent legal standard, the judgment is reversed and the case is re-

---

**4.** *See, e.g.,* Marx, *Who Really Gets Stung? Some Issues Raised by the New Police Undercover Work,* 28 Crime and Delinquency 165, 178–82 (1982).

manded to the district court with directions to reinstate the charges against the defendant.

DUBOFSKY, J., specially concurs and KIRSHBAUM, J., joins in the special concurrence.

QUINN, J., dissents and NEIGHBORS, J., joins in the dissent.

DUBOFSKY, Justice, specially concurring:

I concur in the result of the plurality opinion because the police effort to maintain contact with the informant was reasonable under the circumstances of this case. The informant had maintained contact with Detective Thompson throughout the time the informant lived in Denver, and remained accessible to the Denver police throughout the first month after his move to Grand County. Detective Thompson therefore had no inkling that the informant might disappear, or that the methods of contact he had previously employed would fail.

The plurality opinion, however, does not stop there, but rather formulates a *per se* rule absolving the police in all cases from using any method of contact more formal or demanding than the methods used in this case. I cannot go so far. There may arise cases, unlike the one before us, in which the informant has demonstrated his unreliability, and the police will be obligated to establish formal mechanisms of contact, such as a "regular" telephone number or "regular" call-in time for the informant. These methods of contact do not place an impossible burden on the police, and may be reasonably required in response to the known propensities of the informant. I therefore concur in the result but not the reasoning of the plurality opinion.

I am authorized to say that Justice KIRSHBAUM joins in this special concurrence.

QUINN, Justice, dissenting:

I respectfully dissent. I find nothing in the record indicating an abuse of discretion by the trial court in dismissing this case.

In *People v. Butcher*, 194 Colo. 22, 568 P.2d 1169 (1977), this court held that, once a timely request has been made for information about the location of a disclosed informant who participated in the criminal transaction upon which the charge is based, the prosecution is duty bound to make reasonable efforts to determine the current· location of the informant or face dismissal of the charges. This holding in *Butcher* was reaffirmed in *People v. Rodriguez*, 645 P.2d 851 (Colo.1982), where the court again stated that the question of the reasonableness of the prosecution's effort in maintaining contact with the informant is a question of fact, the resolution of which will not be disturbed in the absence of an abuse of discretion.

To say that a court has discretion in determining the issue of reasonableness in a case such as this implies that the court is not bound to resolve the issue one way or the other. An abuse of discretion occurs only when the court makes a decision that is manifestly unreasonable or arbitrary, or when the court manifests a prejudice, bias, or disregard for the facts before it. *See, e.g., United States v. McCoy*, 517 F.2d 41 (7th Cir.1975), *cert. denied* 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975); *People v. Elmore*, 652 P.2d 571 (Colo.1982). In contrast to the plurality opinion, I do not interpret the trial court's ruling as imposing any standard on the prosecution other than that of reasonable efforts to maintain contact with the informant, nor do I see any abuse of discretion in the trial court's ultimate determination that reasonable efforts were not employed.

In this case, the prosecution knew that the informant was an eye witness and ear witness to the criminal transaction charged against the defendant, that the defendant was relying on the affirmative defense of entrapment, and that the informant was an essential witness to this defense. Notwithstanding this knowledge, the prosecution virtually removed all incentive for the informant to maintain contact with Detective Thompson after January 1982. Although a

burglary case had been filed against the informant, the prosecution, rather than electing to defer dismissal until the completion of the defendant's trial, dismissed the case in January 1982. In addition, Detective Thompson made the final payment to the informant on January 5, 1982. The amount paid to the informant for his efforts in this case was $900, and payment in excess of $2,000 was made for his total efforts in this and other cases. Arrangements could easily have been made to defer payment until the conclusion of the defendant's trial. Furthermore, the prosecution, so far as the record reflects, made no effort to place the informant under subpoena for trial, or for a date certain prior to trial to ensure his availability to the defense.

The reasonableness of prosecutorial efforts in maintaining contact with an informant will vary with the facts of each case. Under the circumstances of this case, I believe the trial court properly exercised its discretion when it concluded that reasonable efforts were not made to maintain contact with the informant and to procure his presence for the benefit of the defendant. I would therefore affirm the judgment of dismissal.

I am authorized to say that Justice NEIGHBORS joins me in this dissent.