The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William Lewis KRAEMER,
Defendant–Appellant.

No. 86CA1101.

Colorado Court of Appeals,
Division IV.

Feb. 22, 1990.

Rehearing Denied March 29, 1990.

Certiorari Denied Sept. 4, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff–appellee.

Anderson, Sommermeyer, Wick & Dow, Thomas R. French, Fort Collins, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, William Lewis Kraemer, appeals the judgment of conviction entered on a jury verdict finding him guilty of fraudulent and prohibited practices in connection with the sale of securities (securities fraud). We affirm.

The indictment against defendant arose from his employment as legal counsel for First Territorial Mortgage. That company solicited investors, to whom it allegedly falsely represented both that every investment was protected by a first deed of trust

or mortgage and that many of the investments were guaranteed by the Mortgage Guaranty Insurance Company. Because the investments were not so protected, and because backing for the investment scheme dried up, many investors were unable to get full reimbursement. The company became insolvent and its head filed petitions for both Chapter 11 reorganization of the company and personal bankruptcy.

By information filed July 25, 1985, defendant was initially charged as codefendant with others in the company with one count of securities fraud in violation of § 11–51–123(1)(c) C.R.S. (1987 Repl.Vol. 4B), and three counts of racketeering based on securities fraud in violation of §§ 18–17–104(3) and 18–17–104(4), C.R.S. (1986 Repl.Vol. 8B) of the Colorado Organized Crime Control Act (COCCA). Defendant's name was stricken from one COCCA count at preliminary hearing, and, on August 19, 1985, defendant pleaded not guilty to the other counts. On defendant's motion, the two remaining COCCA counts were dismissed without prejudice because the Attorney General had not secured the proper legal authority to present them.

Trial on the securities fraud claim was scheduled for December 17, 1985, but the prosecutor moved to continue the trial. That request was opposed by defendant and denied by the trial court on November 29, 1985.

On December 13, 1985, the trial court granted the People's motion to dismiss the securities fraud charge without prejudice. Two days earlier the People had been granted permission to file both that charge and the two COCCA counts under a new case number in district court. The latter case is the direct subject of this appeal.

Defendant pleaded not guilty to the newly instituted charges on December 20, 1985. After two changes in judges, the case was ultimately set for a motions hearing and trial on March 7 and May 5, 1986.

In January 1986, defendant made several motions pertinent to this appeal: a Motion for a Bill of Particulars; a Motion to Disclose Evidence of Uncharged Crimes, Wrongs or Bad Acts of defendant's on which the People intended to rely during trial; and a Motion to Vacate and Reset the Trial Date for no later than February 20, 1986, to comply with the speedy trial dictates of defendant's plea in the first case. The first two motions were granted, the last was denied.

The People then filed a bill of particulars and responded to the Motion to Disclose by stating that the defendant represented himself to be a Colorado lawyer, which he was not.

Shortly before trial, defendant moved to limit the prosecution to information disclosed in the bill of particulars and to dismiss all charges because of speedy trial violations. The court ruled that it would decide on an item by item basis whether evidence could be "reasonably included or anticipated based upon [the] bill of particulars." It denied the motion to dismiss with respect to the COCCA charges but granted it with respect to the charge of securities fraud on the ground that the court should have proceeded on securities fraud in the earlier case in 1985.

Nonetheless, at the close of the evidence and over defendant's objection, the court instructed the jury on the lesser included offense of securities fraud. The jury found defendant guilty of the lesser offense.

### I.

On appeal, defendant asserts that his right to a speedy trial was violated in two ways. First, he argues that all counts should have been dismissed because he was not tried within six months of his not guilty plea in the first suit. Second, he states that even if his speedy trial right was not violated with respect to his trial on the two COCCA counts, his ultimate conviction for the lesser offense of securities fraud did entail such a violation. We reject both theories of error.

■ Pursuant to § 18–1–405, C.R.S. (1986 Repl.Vol. 8B) and Crim.P. 48(b), a criminal defendant must generally be brought to trial within six months from the date of the entry of a plea of not guilty to

the charges in the complaint. The speedy trial deadline is calculated separately for each legitimate information. Thus, if charges in an original information are properly dismissed without prejudice within the speedy trial limits for that case, they become a nullity, and the speedy trial period will begin anew upon defendant's arraignment under a subsequent information. *Meehan v. County Court,* 762 P.2d 725 (Colo.App.1988). As the Meehan court stated, an exception exists only if the defendant "affirmatively establishes the existence of ... a course of action [in which] the People indiscriminately dismiss and refile charges in order to avoid the mandate of § 18–1–405."

### A.

Defendant's first argument that his right to a speedy trial was violated depends on a calculation based on his not guilty pleas to the charges in the first information. He asserts that the deadline must be based on the original plea because the dismissal and refiling of the case brought it within the *Meehan* exception.

■ The burden of proving prosecutorial bad faith in dismissing and refiling charges is on the defendant. *See People v. Dunhill,* 40 Colo.App. 137, 570 P.2d 1097 (1977).

■ The crux of defendant's proof of prosecutorial bad faith is that the People could have gone forward with the securities fraud count in the earlier case and that they sought dismissal solely to obtain the "prosecutorial advantage" of joining the more serious COCCA counts. Although the record confirms that a desire to effect joinder was the major reason for the People's motion to dismiss the earlier securities fraud claim, the record does not support a conclusion that the People were thereby "indiscriminately dismiss[ing] and refil[ing] charges in order to avoid the [speedy trial] mandate."

Implicit in the dismissal of the original securities fraud claim without prejudice was a finding that the People's motion was made not to harass the defendant but rather for the legitimate purpose of joinder.

The function of joinder is both "to protect the accused against the oppressive effect of sequential prosecutions based on conduct occurring during the same criminal episode and to conserve judicial and legal resources that otherwise would be wasted in duplicative proceedings." *Jeffrey v. District Court,* 626 P.2d 631 (Colo.1981).

Furthermore, there is no evidence in the record that the People were attempting to circumvent defendant's right to a speedy trial. Rather than delaying, the People filed the new case two days before they requested that the first case be dismissed. At that time over two months remained in the speedy trial period applicable to the first case. Arraignment was held nine days after the new case was filed, and trial was set for 1½ months later, still within the speedy trial deadline for the first case. Subsequent delays were not caused by the People.

Under these circumstances, we cannot conclude that the dismissal and refiling of any of the charges was a prosecutorial maneuver to subvert defendant's right to a speedy trial. Thus, the *Meehan* rule applies rather than the exception; the speedy trial calculation runs from defendant's not guilty plea in the latter case; and none of the charges should be barred as being in violation of defendant's right to a speedy trial.

### B.

Defendant's second basis for asserting that his right to a speedy trial was violated is that even if his trial on the COCCA counts was proper, his conviction for the lesser offense of securities fraud was not.

Defendant reasons that the securities fraud count was properly dismissed before trial on speedy trial grounds and that the People therefore should not have been allowed to introduce it "via the back door" as a lesser included offense. However, we have already determined that trying defendant for securities fraud did not violate his right to a speedy trial.

The trial court's original ruling that the securities fraud claim should be dismissed

was error. Because the order of dismissal was issued before jeopardy attached and was not a final judgment, the court was entitled to reconsider it as long as the case remained within its jurisdiction. *See People v. Roybal*, 672 P.2d 1003 (Colo.1983). Its tender of a jury instruction on the lesser included offense of securities fraud was, in effect, such a reconsideration and, as discussed above, did not violate defendant's right to a speedy trial.

## II.

Defendant also contends that reversal is required because the trial court allowed the admission of testimony the nature of which was unknown until after the second day of trial and which was not disclosed in the bill of particulars. We disagree.

On the evening of the second day of trial, a previously endorsed prosecution witness informed the prosecution that he would testify not only that he had been defrauded by First Territorial Mortgage but also that defendant was personally involved in the sale. The prosecutor immediately called defendant's attorney to advise him of the new development.

The next morning, defendant moved that any testimony concerning his personal involvement in the scheme be excluded on the grounds that no such anticipated evidence was disclosed in the bill of particulars and that admission of the testimony would unfairly prejudice his defense. He asserted there, as here, that prejudice would result because defendant's credibility would be damaged in that his attorney had told the jury in his opening statement that there was no evidence that defendant had been directly involved in sales, and because defendant would have no effective means of rebutting the surprise testimony. Defendant did not request either a continuance or a mistrial.

The court allowed the testimony on the condition that defendant and his attorney be allowed to interview the new witness prior to his testifying, and it also informed the jury contemporaneously with the testimony that neither party was aware of its substance until the previous night. We perceive no error in the trial court's handling of the issue.

We first reject defendant's reliance on the bill of particulars. The issue here is not whether the bill was "insufficient," as suggested by the defendant, but rather whether the trial court abused its discretion in endorsing newly discovered testimony after the trial had begun.

■ Late endorsement of a witness does not constitute reversible error unless the defendant shows that he was prejudiced because the witness' appearance was a surprise and there was inadequate opportunity to interview him before trial. *People v. Bailey*, 191 Colo. 366, 552 P.2d 1014 (1976). "Even where such prejudice is shown, the granting of leave for late endorsement is not reversible error unless the defendant makes a timely request for a continuance which is denied by the trial court." *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978).

■ Because the situation is analogous, we hold that the same test applies where, as here, the witness has already been endorsed but, through no fault of the prosecution, *see People v. Wandel*, 696 P.2d 288 (Colo.1985), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985), the witness divulges new information.

Here, the defendant does not argue that the prosecutor acted in bad faith or was negligent in the investigation in failing to secure or divulge the substance of the new testimony earlier. Defendant argues, rather, that he was surprised and prejudiced by the evidence in that previously disclosed evidence did not indicate that defendant was personally involved in the security sales and in that defendant's attorney had spoken of this lack of evidence in his opening statement.

The latter prejudice was cured by the court's instruction to the jury that the evidence was newly discovered. The former prejudice was reduced by the court's requirement that the defendant be allowed to interview the witness before he testified, *see People v. Castango*, 674 P.2d 978 (Colo. App.1983), and then waived by defendant's

failure to request a continuance for further preparation. *See People v. Sepeda, supra; People v. Wandel,* 713 P.2d 398 (Colo.App. 1985), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). Therefore, the trial court did not abuse its discretion in admitting the testimony.

## III.

Finally, defendant asserts that the trial court erred in allowing the prosecution to cross-examine him concerning two prior bad acts. He argues that questions related to his failure to file Colorado tax returns for 1983 were improper because the People did not list this impropriety in its response to defendant's motion to disclose prior improprieties. In addition, defendant challenges the impeachment concerning both the tax return and his use of a letterhead which gave the false impression that he was licensed to practice law in Colorado on the ground that the questions were asked for the purpose of showing bad character and, therefore, were improper under CRE 404(b). We disagree with both contentions.

### A.

Although we do not condone the People's omission of defendant's failure to file a tax return for 1983 from its response to defendant's motion to disclose, we disagree with defendant that this amounts to reversible error.

■ A conviction will not be reversed because of non-compliance with discovery rules absent a cogent demonstration of prejudice to the defendant. *People v. Graham,* 678 P.2d 1043 (Colo.App.1983) *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2660, 81 L.Ed.2d 366 (1984); *see People v. Steed,* 189 Colo. 212, 540 P.2d 323 (1975).

■ Here, the record indicates that the prosecution did not specifically ask defendant when he had filed his tax return. Instead, in response to an inquiry by the People concerning the material fact of his employment relationship with First Territorial Mortgage, which was not objected to, defendant stated that he had paid his income taxes. When pressed, he volunteered

that he had not filed his 1983 Colorado tax return.

It is questionable whether this limited colloquy affected defendant's credibility. Even if it did, the defendant has provided no evidence of how he could have responded more ably on the subject had he known it would arise. Defendant's attorney did not even object to the testimony until the entire subject had been exhausted.

Although defendant asserts in his reply brief on appeal that the prosecution's prior disclosure of its intent to rely on this information for impeachment "may have affected the decision of whether or not the defendant took the stand," because of defendant's failure to raise this argument at any other time in the proceedings and the extensive and detailed testimony provided by defendant, we find the assertion unpersuasive.

Hence, we conclude that defendant has made no "cogent demonstration of prejudice" and, consequently, that the People's failure to disclose this potential impeachment evidence is not reversible error.

### B.

We also disagree with defendant's assertion that the testimony concerning both his alleged misrepresentation of himself as a Colorado attorney and his failure to file was inadmissible character evidence under CRE 404(b).

■ First, the two questions concerning defendant's use of a letterhead which, contrary to Code of Professional Responsibility DR 2–102(D), included his name and a Colorado address without a notation that he was licensed to practice law only in New Mexico, were not allowed as evidence of prior acts, unrelated to the case at hand to prove character. Rather, in light of the fact that the letterhead was used in connection with defendant's work for First Territorial, the questions were asked in the context of presenting evidence of the *res gestae* of the fraudulent scheme for which defendant was on trial. As such, the questions were relevant and, considering their limited scope, we cannot conclude that their

relevance was outweighed by danger of unfair prejudice. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

Moreover, defendant addressed the subject of the stationery on direct examination, thus opening the door to cross-examination thereon. *See* CRE 611(b); *People v. Lucero,* 677 P.2d 370 (Colo.App.1983). Therefore, the questions were not improper.

■ Nor was cross-examination of the defendant on his tax status improper under the circumstances of this case.

CRE 404(b) prohibits the introduction of extrinsic evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith," while legitimizing the introduction of evidence of such acts "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." CRE 404(b). It does not address the use of such acts solely for impeachment.

Use of a witness' prior conduct to impeach his credibility is addressed in CRE 608(b). *See also* CRE 404(a)(3). CRE 608(b) gives the trial court the discretion to allow inquiry on cross-examination concerning specific instances of the witness' conduct which relate to "his character for truthfulness or untruthfulness."

Here, defendant's conduct in failing to file a Colorado tax return was used only for impeachment on cross-examination. Thus, its use is governed by CRE 608(b), rather than CRE 404(b), and the propriety of such use depends on whether it reflects on the witness' character for truthfulness.

We acknowledge that civil tax problems are not necessarily reflective of truthfulness or untruthfulness if there is no evidence of intentional wrongdoing, *see People v. Pratt,* 759 P.2d 676 (Colo.1988). However, under the circumstances here—in which defendant volunteered the prohibited information, the entire colloquy consisted of five questions during a trial which took six days, there was testimony by at least four character witnesses that defendant, in their opinion, was a very honest man, and

the evidence of guilt was otherwise significant—we conclude that any error in admitting the testimony did not substantially influence the verdict or affect the fairness of the trial and was, therefore, harmless. *See Callis v. People,* 692 P.2d 1045 (Colo. 1984).

Therefore, the trial court did not abuse its discretion in permitting the impeachment at issue here.

Judgment affirmed.

TURSI, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

In my view, the trial court committed reversible error in permitting cross-examination of defendant about his failure to file a Colorado income tax return for 1983 and his failure to indicate on his letterhead that he was admitted to practice law only in New Mexico. CRE 608(b) provided the legal basis for the People's cross-examination and on appeal the People assert the same rule to justify the cross-examination. The use of cross-examination to demonstrate specific instances of truthfulness which are unrelated to the specific charges in the case on trial is inherently problematic.

Researchers who have analyzed the phenomenon of lack of truthfulness, including lying, within American culture have determined that it is of significant proportions. S. Bok, *Lying–Moral Choice in Public and Private Life,* (1978). Therefore, a high percentage of defendants and witnesses could be cross-examined about untruthful acts or statements made during the course of their lifetime. These episodes not only divert the jury from the real issues of a defendant's guilt or innocence in the pending case, but create an atmosphere in which the "side show," takes over the trial.

Furthermore, the subject matters about which the prosecutor cross-examined here (*e.g.,* failure to file a Colorado income tax return for 1983 and not indicating defendant's practice of law was limited to New

Mexico) are neither instances of criminal conduct nor necessarily indicative of deceit. In my opinion the admission that defendant had not filed a Colorado income tax return for 1983 and the admission of his letterhead showing it was not properly titled to reflect the fact that he was not admitted to practice law in Colorado were prejudicial and had limited probative value.

I agree with the majority's implicit conclusion that the fact a person turns out to have either understated the amount of income tax he owes or fails to file a state return in a given year is not of sufficiently high correlation to a lack of truthfulness to warrant the use of that fact under CRE 608(b). Thus, there is insufficient evidence of intent to deceive to justify the questioning about the state income tax return.

The government recognizes that failure to pay income taxes or even to file a return in a given year occurs for a myriad of reasons, and only a small percentage are ever prosecuted criminally. *See United States v. Byrne,* 422 F.Supp. 147 (E.D.Pa. 1976) *modf'd on other grounds,* 560 F.2d 601 (3rd Cir.) *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978).

Here, although the majority agrees the income tax information was inadmissible it concludes its admission was harmless error. I disagree with this conclusion. First, my review of the record indicates that although the evidence supports the verdict, defendant's guilt was not overwhelmingly demonstrated. The mentioning of failure to pay income taxes may well have tipped the balance.

A person other than defendant was the creator and principal mover behind the "Ponzi" scheme involved here. There was unrefuted expert testimony that Ponsi schemes are very sophisticated and often employees of the creator of the scheme are deliberately kept unaware of its many aspects. Typically, and as occurred here, the principal person provides only selected bits of information about the scheme to his employees.

Several former employees of the investment companies involved in this scheme testified for the People and stated that they were unaware of the scope and illegality of the investment scheme and in their opinion, for the same reasons, Kraemer did not act criminally. Furthermore, investigators for the People and other legal experts rendered opinions that the evidence did not support a conclusion that Kraemer had engaged in criminal activity.

Defendant had no prior arrests or convictions. He worked on this matter for only a few months. The evidence showed that the principal in the scheme made several hundred thousand dollars from it; whereas defendant was paid $3,000 a month plus expenses. Thus, I found the evidence sufficient for conviction but not overwhelming.

I disagree with the majority's characterization that defendant "volunteered" this tax information. Defendant responded to an explicit question by the prosecution as to whether he had paid his Colorado taxes. Moreover, in my opinion a defendant's admission of not filing a return and paying income taxes can so inflame and affect a juror that it is *per se* prejudicial.

I agree that the failure of defendant to indicate on his letterhead that he was admitted only to practice law in New Mexico was improper and apparently a violative of disciplinary rules. Moreover, I agree in certain circumstances that the failure to indicate the limitation on a person's practice can be fraudulent and deceitful and therefore arguably admissible under CRE 608. I also agree that defendant may have engaged in the unauthorized practice of law.

I strongly resist, however, the supposed violation of disciplinary rules as a springboard to convict attorneys in criminal cases. I believe the trial court erred in not requiring, at an *in limine* hearing, more of an evidentiary showing that the purpose and intent of the use of this letterhead was to deceive people.

Apparently, under Code of Professional Responsibility DR2–102(D) the firm name need not reflect any limitations on practice. Thus, it is the failure of an individual to place an asterisk next to his name with a

statement indicating the person's practice is limited to another state. Here, defendant's practice in Colorado was limited to assisting a firm's New Mexico client. There is no evidence that either defendant or his law firm represented other clients from Colorado in regard to Colorado business. Much of the work done for the client involved New Mexico property and laws. Defendant never directly stated orally or in writing that he was admitted to practice law in Colorado. Not one witness testified he had relied on any representations as to defendant's bar admission, including the letterhead, in their dealings with defendant.

Since CRE 608 prevents the parties from putting on extrinsic evidence to the fact asserted in cross-examination, I believe that the person cross-examining should have made an evidentiary showing to the trial court, at an *in limine* hearing, that the act of failing to place an asterisk with accompanying information on a letterhead was done with intent to deceive and that in fact people were deceived. Here, there was no such preliminary evidentiary requirement.

Other courts which have addressed the question of the admissibility of other instances of lack of truthfulness under rules identical to CRE 608 have concluded that in circumstances significantly more probative of truthfulness than these that such evidence was inadmissible. *United States v. Bentley*, 706 F.2d 1498 (8th Cir.1983) (involvement in drug operation, without resulting criminal conviction, is not indicative of truthfulness); *United States v. Hastings*, 577 F.2d 38 (8th Cir.1978) (involvement in armed robbery is not indicative of truthfulness).

Historically, the impeachment of criminal defendants by acts not relevant to the charges has been severely restricted. *Tarling v. People*, 69 Colo. 477, 194 P. 939 (1921). In disregarding this restriction, here, the majority, under the guise of impeaching credibility, has opened the door to convict people for being immoral or "bad men."

In explaining why collateral bad acts of a witness should not be admitted into evidence J. Wigmore; *Evidence* § 57 at 456 (3d ed. 1940) states:

"The deep tendency of human nature to punish, not because our victim is guilty, this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in and out of court."

I also dissent from the majority's conclusion that the trial court did not err when it refused to exclude testimony from a prosecution witness.

After opening statements, the prosecution learned for the first time that defendant had been personally involved in the loan/sales transactions with this witness. The trial court had ordered the prosecution to inform defendant of all alleged statements made by defendant upon which the prosecution would rely on trial. The prosecutor informed defendant and the court there were no statements indicating he was personally and directly involved with investors in these loans/sales transactions.

This case was extensively investigated by the State of Colorado. A special prosecutor from the Attorney General's Office handled the case. Although only a few testified, there were over 100 investors listed as potential investors by the prosecution as potential witnesses. Apparently the investor who testified that defendant had dealt directly with him was not questioned in this regard until after the trial started.

If, as here, the prosecutor represents to defendant and the court that none of the witnesses he will call will testify regarding a certain matter, then it is incumbent upon the prosecutor to have first interviewed his witnesses on that point. If, after being questioned by the prosecution and giving a negative response on this point, the witness then later "remembers" there were different facts, the court may, within its discretion, permit such testimony. Here, however, there is no suggestion that the prosecution or its investigators had ever asked the witness about defendant's involvement with them. Therefore, the prosecutor's

representations to defendant and the court were not based on a previous interview of the witnesses.

When defendant's attorney was informed of the new testimony, he moved to exclude it and in so doing stated:

"We are severely prejudiced in this case because we told the jurors one particular thing and now there is going to be evidence of another state of facts. Our credibility is severely diminished in this case, perhaps more importantly, *we did specifically request this kind of information and the court order that particular information be provided. It was not.*" (emphasis added)

Moreover, defense counsel pointed out to the trial court that the episode involving the witness had happened three years before and, for defendant to establish an alibi or another defense for that time, he would need more time than a brief continuance during trial.

It is important for both defense counsel and defendant to establish their credibility with the jury in order to present effectively their defense. If, as here, defendant takes a position in opening statement because of reliance on information provided by the prosecution and that information turns out to be false, defendant has suffered a significant loss of credibility with the jury and his defense has been damaged.

Defendant is insured a right to marshal and present an effective defense. *People v. McGrath*, 793 P.2d 664 (Colo.App.1989). Effective defenses to a criminal case cannot be made without long hard pretrial work and analysis. Although the response of an attorney to new developments within a trial is important to the success of the case, the work that predates the trial is of at least comparable, if not greater, importance.

Here, the late presentation of this evidence to defendant and his attorney precluded this pretrial analysis and defense. Moreover, if, as here, defendant and his attorney are presented after opening statement with critically different information than was represented to them pursuant to court order by the prosecution before trial, and such testimony not only undermines defendant's stated theory of the case but also presents a new and difficult factual setting, defendant is entitled either to have the evidence excluded or to be granted a mistrial so that he can effectively present his case. This is particularly true where, as here, the prosecutor made such representations to defendant and the court without having interviewed his witnesses.

For both the impermissible cross-examination of defendant about his failure to file a tax return and the omission on his letterhead and for the admission of the newly discovered testimony of the prosecution witness, I would reverse the judgment of conviction and remand for new trial.